IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
WAG'N ENTERPRISES, LLC,        )
                               )
        Plaintiff,             )
                               )
        v.                     )          1:11cv955 (LMB/IDD)
                               )
UNITED ANIMAL NATIONS,         )
        d/b/a REDROVER,        )
                               )
        Defendant.             )
```

MAY  9 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment.  For the reasons discussed below, plaintiff's motion will be denied, defendant's motion will be granted, and summary judgment will be entered in favor of the defendant.

### I.    BACKGROUND

Plaintiff Wag'N Enterprises, LLC ("Wag'N") has alleged infringement of its registered service mark in the term "Wag'N Rover Respond'R," which is used in connection with "providing emergency care notification, namely, providing pet owners with a 24 hour number to call in case they get injured during a car accident to allow temporary pet care, and contacting of family and friends to pick up and care for pets involved in the accident."  Schiffren Mot. Decl. Ex. C (United States Patent and Trademark Office ("USPTO") service mark Principal Register).

Plaintiff also claims trademark rights in the term "Rover
Respond'R," an unregistered shortened form of the registered
mark.

Wag'N is a one-person limited liability company headed by
Ines de Pablo and located in Herndon, Virginia.   Founded in
2007, it provides a variety of pet products geared toward animal
safety.   Specifically at issue in this action is plaintiff's
Wag'N Rover Respond'R "Mobile Emergency Information Kit," which
includes a mobile emergency pocket folder, vehicle and home
alert decals, animal transport forms, a pet passport documenting
veterinary record information, and a CD-ROM with interactive
forms, such as an emergency contact form and printable lost pet
poster.   See Schiffren Opp'n Decl. Ex. H; see also Summary
Judgment Hearing Ex. 1.   The kit is described as "[a] step-by-
step documentation toolkit that provides First Responders the
necessary information they need to better help you and your pet
in case of an emergency."   See Summary Judgment Hearing Ex. 1.
The outer packaging of the kit and its contents[1] are the only
products on which plaintiff places the mark "Wag'N Rover
Respond'R."   De Pablo Dep. at 129:20-130:4.   In addition to the
kit, plaintiff uses the "Wag'N Rover Respond'R" mark on its
website to promote the kit.   Customers can also enroll in a

---

[1] The home alert decals do not have the "Wag'n Rover Respond'R"
mark on them.

membership program which provides members online account access
and a 24/7 Wag'N emergency phone number.  See Schiffren Mot.
Decl. Ex. F at W21; Schiffren Opp'n Decl. Ex. H at W70.  The
Wag'N Rover Respond'R program was launched on August 20, 2008
and the mark was registered on December 9, 2008. Schiffren Mot.
Decl. Ex. F at W41; Schiffren Reply Decl. Ex. M.

        Defendant United Animal Nations is a California non-profit
service organization established in 1987, which provides
"emergency sheltering, disaster relief and financial assistance
for animals in crisis."  Forsyth Decl. Ex. D (June 11, 2011
press release).  In June 2011, defendant changed its name to
"RedRover" and altered its program names accordingly.  See id.
Among other services, defendant runs a "RedRover Responders"
program, which utilizes volunteers to "shelter[] and care[] for
animals displaced by natural disasters and reconnect[] them to
owners."  Id.  The program also provides shelter and care
services for animals rescued from abusive situations.  Id.

        Plaintiff contends that the "RedRover Responders" name
infringes its claimed trademark rights in "Wag'N Rover
Respond'R" and "Rover Respond'R."  The complaint alleges federal
causes of action for trademark infringement under 15 U.S.C.
§ 1114(1) and unfair competition under 15 U.S.C. § 1125(a), as
well as common law trademark infringement and unfair
competition.  Plaintiff seeks injunctive relief only, as it has

3

conceded that it has suffered no monetary damages.  See
Berkowitz Mot. Decl. Ex. J at 9 (Wag'N response to Interrogatory
No. 12)

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A genuine dispute of material fact exists "if
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  The Court must view the record
in the light most favorable to the nonmoving party.  See Bryant
v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  The
moving party must initially show the absence of a genuine
dispute of material fact, and once it has met its burden, the
nonmovant "must come forward and show that a genuine dispute
exists."  Arrington v. ER Williams, Inc., No. 1:11cv535, 2011
U.S. Dist. LEXIS 144909, at *11-12 (E.D. Va. Dec. 16, 2011)
(Cacheris, J.) (citing Celotex Corp. v. Catrett, 477 U.S. 317,
325 (1986) and Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986)).  The nonmoving party,
however, "must do more than simply show that there is some
metaphysical doubt as to the material facts."  Matsushita, 475
U.S. at 586.  Accordingly, the "mere existence of a scintilla of

4

evidence in support of the [nonmovant's] position will be
insufficient; there must be evidence on which the jury could
reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.
Therefore, "[w]here the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party," summary
judgment is appropriate.  Matsushita, 475 U.S. at 587.

### III. DISCUSSION

To prevail on both its federal and common law claims,
plaintiff must show that it holds a valid and protectable mark
and that defendant's use of its mark causes a likelihood of
confusion in consumers.  George & Co., LLC v. Imagination Entm't
Ltd., 575 F.3d 383, 393 (4th Cir. 2009); Lone Star Steakhouse &
Saloon v. Alpha of Va., Inc., 43 F.3d 922, 930 n.10 (4th Cir.
1995) ("The test for trademark infringement and unfair
competition under the Lanham Act is essentially the same as that
for common law unfair competition under Virginia law....").
Although determining the likelihood of confusion is "inherently
factual" and "depends on the facts and circumstances in each
case," Rosetta Stone Ltd. v. Google, Inc., 2012 U.S. App. LEXIS
7082, at *15 (4th Cir. Apr. 9, 2012) (quoting Lone Star, 43 F.3d
at 933), summary judgment may still be appropriate where "the
evidence is so one-sided that there can be no doubt about how
the question should be answered."  Retail Servs., Inc. v.
Freebies Publ'g, 247 F. Supp. 2d 822, 825 (E.D. Va. 2003)

(quoting Door Sys., Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 171 (7th Cir. 1996)).

In evaluating whether a likelihood of confusion exists, courts in the Fourth Circuit consider seven factors: "a) the strength or distinctiveness of the mark; b) the similarity of the two marks; c) the similarity of the goods/services the marks identify; d) the similarity of the facilities the two parties use in their businesses; e) the similarity of the advertising used by the two parties; f) the defendant's intent; [and] g) actual confusion." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984) (citing Sun-Fun Prods. v. Suntan Research & Dev., 656 F.2d 186, 189 (5th Cir. 1981)). The quality of the defendant's product and the level of sophistication of consumers are also considered. George & Co., 575 F.3d at 393. The Fourth Circuit has cautioned, however, that "not all these factors are always relevant or equally emphasized in each case." Pizzeria Uno, 747 F.2d at 1527 (citation and alteration omitted).

A. Trademark Status of Plaintiff's Marks

Defendant does not contest that plaintiff's registered mark, "Wag'N Rover Respond'R," is a protected trademark. See Def.'s Opp'n at 7. Plaintiff also alleges, however, that defendant infringes "Rover Respond'R," a shortened version of the registered mark. See Schiffren Opp'n Decl. Ex. H (collection of Wag'N advertisements and other materials,

6

including a <u>Fido Friendly</u> advertisement referring to "Rover Respond'R v2.0"). It is undisputed that "Rover Respond'R" is not a federally registered trademark,[2] and plaintiff has never sought to register the mark with the USPTO. <u>See</u> De Pablo Dep. at 85:16-86:4 (explaining that Wag'N has applied for federal trademark registration for 43 marks but not for "Rover Respond'R"). Trademark protection is still available for an unregistered mark if the mark is used in commerce and is distinctive. <u>See Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Estrangers a Monaco</u>, 329 F.3d 359, 363 (4th Cir. 2003); <u>Lone Star</u>, 43 F.3d at 930 n.10. Defendant does not appear to dispute that the unregistered mark has been used in commerce, but does argue that it is not sufficiently distinctive to qualify for trademark protection.

The spectrum of distinctiveness ranges from fanciful marks, which consist of "made-up words" such as "Xerox," which were "created for the sole purpose of serving as a trademark," <u>George & Co.</u>, 575 F.3d at 394, to generic marks, such as the word "computer" to refer to a computer. Between the two extremes are

---

[2] Defendant makes much of the fact that plaintiff's website represents "Rover Respond'R" as being registered with the USPTO and alleges that plaintiff's "unclean hands" in this regard should preclude its action for infringement. Because plaintiff fails to satisfy the <u>Pizzeria Uno</u> factors, defendant's argument need not be considered.

arbitrary, suggestive, and descriptive marks, the last of which requires a finding of secondary meaning in order to be eligible for trademark protection.  Secondary meaning exists "if in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself."  Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996) (citation and internal quotation marks omitted).

Plaintiff's contention that "Rover Respond'R" is an arbitrary mark is unpersuasive.  Arbitrary marks "involve common words that have no connection with the actual product," which is not the case here.  George & Co., 575 F.3d at 394.  "Rover" is a common name for dogs, and when used as a verb, suggests movement or wandering.  The dictionary definition of "responder" is "a person or thing that responds," meaning "to act in reply" or "react."  See Berkowitz Mot. Decl. Exs. F & G (dictionary definitions).  Plaintiff's own statements indicate that she chose "Rover" and "Respond'R" precisely because of these common associations.  See De Pablo Dep. at 67:13-22.  Indeed, the USPTO required plaintiff to disclaim the word "responder" (spelled correctly) in order to register the full-length version of the mark ("Wag'N Rover Respond'R") because "it merely describes that the services act as a 'responder' in that they provide a response to the consumer's needs."  See Berkowitz Mot. Decl. Ex.

B (July 2, 2008 priority action). For these reasons, the words are not arbitrarily assigned to plaintiff's product.

"Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." Pizzeria Uno, 747 F.2d at 1528 (quoting Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 379 (7th Cir. 1976)). Here, although the words "rover" and "responder" are linked to the purpose of the product, they are not merely descriptive. The two words themselves do not automatically conjure an image or understanding of the nature of Wag'N's emergency kits, as one can imagine many items that could "rove" or "respond" that bear no resemblance to plaintiff's product. See Pl.'s Opp'n at 15 n.1. "Rover Respond'R" is thus suggestive in that it "connotes, without describing, some quality, ingredient, or characteristic of the product." Sara Lee, 81 F.3d at 464.

Because "Rover Respond'R" is suggestive, it does not require secondary meaning in order to be protectable as a trademark. Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 539 (4th Cir. 2004). Accordingly, the Court finds that the unregistered mark "Rover Respond'R" is eligible for trademark protection.

B. Likelihood of Confusion

9

Having established that plaintiff's two claimed marks are subject to trademark protection, the only remaining issue is whether defendant's "RedRover Responders" mark is confusingly similar to plaintiff's marks.  The Court will discuss each of the <u>Pizzeria Uno</u> factors, beginning with those that are most compelling in this case: the weakness of plaintiff's mark; the dissimilarity of the marks; the lack of actual confusion on the part of consumers; and the lack of bad faith on the part of the defendant.

### 1. Strength of the marks

The strength of a plaintiff's mark is an important factor in the likelihood of confusion analysis, because "the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark."  <u>George & Co.</u>, 575 F.3d at 393.  A mark's conceptual strength is measured by its level of distinctiveness—<u>i.e.</u>, whether it is generic, descriptive, suggestive, arbitrary, or fanciful.

As with the unregistered mark, all three words in the registered "Wag'N Rover Respond'R" mark are linked to the purpose of the emergency kit product.  Specifically, the name of the company, "Wag'N," is clearly meant to invoke pets' wagging tails.  And as discussed above, the words "rover" and "responder" evoke images related to the pet emergency preparation nature of the product.  Plaintiff correctly argues,

10

however, that the USPTO's registration of the mark on the Principal Register without requiring a showing of secondary meaning is prima facie evidence that the mark is suggestive.  See id. at 395.  Defendant has not attempted to rebut this presumption, and accordingly, the Court concludes that the "Wag'N Rover Respond'R" mark is suggestive.  As suggestive marks, both "Wag'N Rover Respond'R" and "Rover Respond'R" fall in the middle of the spectrum of distinctiveness and the resulting conceptual strength.

In addition to its distinctiveness, a mark's strength or weakness is also influenced by its commercial strength. Commercial strength is evaluated by considering factors similar to those used in the analysis of a mark's secondary meaning, including "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark."  Id. (citing Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990)).

As an initial matter, in its response to defendant's interrogatories, plaintiff admitted that it makes no claim that its marks have acquired secondary meaning.  See Berkowitz Reply

11

Decl. Ex. G (plaintiff's response to Interrogatory No. 7).[3]
Aside from this concession, the secondary meaning factors
indicate that the commercial strength of plaintiff's marks is
quite weak.  For example, although Wag'N has been using the
marks for four years, there is no evidence in this record of any
attempt by other persons or businesses to plagiarize them.
Moreover, plaintiff has produced no studies to show that
consumers associate the marks with Wag'N.  The evidence is also
very unclear as to how much plaintiff has spent "promoting its
marks."  Wag'N's documentation on this point is not particularly
clear, and plaintiff offers conflicting interpretations of its
own data, representing in its opening memorandum that it had
spent over $20,000 to advertise its marks, while claiming in its
reply brief that $150,000 has been spent.  Even taking the
$150,000 figure at face value, the marketing documentation
appears to cover nationwide advertising efforts for the entire
period from the launch of Wag'N Rover Respond'R through the
start of this litigation.  See Schiffren Reply Decl. Ex. D.

---

[3] Plaintiff now takes issue with defendant's use of its
interrogatory response, because plaintiff objected to the
interrogatory at the time.  Specifically, Wag'N argues that it
believes its marks are not descriptive and thus do not require
secondary meaning, and therefore that "the interrogatory was
irrelevant."  Pl.'s Reply at 15-16.  Despite these objections,
however, plaintiff must stand by the statement it made under
oath: that "Wag'N has not claimed that its marks have
established secondary meaning at this time."  Berkowitz Reply
Decl. Ex. G.

Although Wag'N argues that it has dedicated a "significant percentage of its income" to promoting the two marks at issue in this lawsuit, defendant correctly observes that $150,000 spent nationwide over a four-year period is insubstantial in the context of the greater pet product market.  Moreover, plaintiff represents that it has sold only 150 emergency kits featuring the mark which, at a price of $34.95, would equate to a very modest revenue of $5,242.50 for the products labeled with the registered mark.  Accordingly, the Court finds that "Wag'N Rover Respond'R" and "Rover Respond'R" are overall very weak marks.[4]

## 2. Similarity of the marks

A "threshold of intrinsic similarity" between plaintiff's and defendant's marks is required to establish likelihood of confusion, as "[t]he Lanham Act was obviously not intended to create a barrier to competition by preventing the use of distinguishable trademarks to market similar goods through identical channels."  Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 320 (4th Cir. 1992).  In evaluating the similarity between two marks, a court must look to the dominant portions of each mark and consider "whether there exists a similarity in sight, sound, and meaning which would result in confusion."

---

[4] Although the record includes certain press coverage, the coverage is not so extensive as to factor into the analysis of the strength of the mark.  See, e.g., Schiffren Opp'n Decl. Ex. I (cnn.com article quoting de Pablo and referencing Wag'N's emergency kits).

George & Co., 575 F.3d at 396.  A court must look to "the marks
as a whole, rather than the component parts of the marks."
Sweetwater Brewing Co., LLC v. Great Am. Rests., Inc., 266 F.
Supp. 2d 457, 462 (E.D. Va. 2003).  The similarity inquiry
occurs "in the context in which [the mark] is seen by the
ordinary consumer."  CareFirst of Md., Inc. v. First Care, P.C.,
434 F.3d 263, 271 (4th Cir. 2006) (quoting Anheuser-Busch, 962
F.2d at 319).

       No dispute of material fact exists as to the similarity of
the disputed marks.  "Wag'N Rover Respond'R" and "RedRover
Responders" share no identical component words.  In addition to
a series of other differences, defendant's mark does not use the
word "Wag'N," the word "Rover" is not used as a separate word
but is always preceded by "Red" with no space between "Red" and
"Rover," and unlike the plaintiff's mark, which substitutes an
apostrophe for the final "e" in "Responder," thereby creating a
unique aesthetic parallel between the spellings of "Wag'N" and
"Respond'R," defendant always uses the plural "Responders," with
no apostrophe and no capital "R" on the end.  Moreover, the
marks are not confusingly similar in meaning.  For example, the
word "rover" in plaintiff's mark is used to evoke movement,
whereas "RedRover" in defendant's mark reflects its house mark.

       Plaintiff protests that despite these differences, the
marks are still "extremely similar in appearance" and that

"RedRover Responders" "incorporates the essential essence" of
plaintiff's mark.  Pl.'s Mem. at 15.  Although any one of these
differences between the marks standing alone might not preclude
a finding of confusing similarity, when considered together
these differences clearly establish that the marks are
noticeably dissimilar.

The dissimilarity in the marks is amplified when they are
displayed in logo form.  Plaintiff's logo consists of a large
orange oval with the word "Wag'N" written in a distinctive large
black typeface inside; the words "Rover Respond'R" appear in
much smaller white type on a red banner underneath the oval.  In
contrast, defendant's logo depicts the word "RedRover" in large
type against a plain white background, with the word "Red" in
gray print and "Rover" in red print; "Responders" is listed in
smaller type underneath.  The typeface used in defendant's logo
is also quite different from that used in plaintiff's.




From observing the two logos, it is obvious that "Wag'N" is
the dominant portion of plaintiff's mark and "RedRover" the
dominant part of defendant's mark; accordingly, there is no

15

"identity of the dominant term in both marks."   Pizzeria Uno,
747 F.2d at 1534.   Plaintiff attempts to avoid this conclusion
by arguing that "the dominant or salient portions of the marks
are 'rover respond'r' and 'redrover responders'" on the basis of
those phrases being "separated from the rest of the text" and
their using "the same red color and shading."   Pl.'s Mem. at 18.
This argument cannot be taken seriously when the logos
themselves are examined.   Although both marks use some red
coloring, the design, emphasis, typeface, font size, and shape
of the logos are easily distinguishable.

    Plaintiff also tries to rely on defendants' internal
emails, which plaintiff characterizes as defendant admitting
that the marks are similar, to establish similarity.   The email
exchange in question occurred in late June 2011, soon after
defendant received a cease and desist letter from Wag'N.   See
Schiffren Mot. Decl. Ex. II.   In the first email of the chain,
RedRover president Nicole Forsyth suggests that, in an effort to
prevent a lawsuit, RedRover could put a link to Wag'N on its
website.   In response, Lisa DeCarlo, a member of defendant's
Legal Advisory Committee, recommended against including such a
link "until we know for sure how legitimate their product is."
DeCarlo went on to explain that she "would hate to recommend a
product to our members and have them feel they got ripped off,
especially when we provide similar materials."   Debra Vella,

another member of the committee, stated that she thought that a
link on the RedRover website "might create confusion because of
the similarity in name—that visitors would believe this was
actually a UAN product."   Plaintiff seizes on the "similar
materials" comment by DeCarlo and the "similarity in name"
statement by Vella to argue that defendant itself has
essentially conceded that its mark is confusingly similar to
Wag'N's.   This argument is meritless.   Defendant's comments were
made under threat of litigation when it was considering whether
it should affirmatively associate itself with Wag'N; of course
such an association would increase any likelihood of confusion.
Moreover, calling the marks "similar" in a colloquial sense does
not mean that they meet the definition of confusing similarity
required to sustain a trademark infringement action.[5]   For all of
these reasons, viewing the evidence in the light most favorable
to the plaintiff, no reasonable fact-finder could find that the
parties' marks are sufficiently similar to support a conclusion
of infringement.

   3. Actual confusion

---

[5] Neither can plaintiff demonstrate sufficient similarity between
defendant's "RedRover Responders" mark and the unregistered
"Rover Respond'R" mark.   Although the two marks appear more
similar when "Wag'N" has been removed from plaintiff's mark, the
abbreviation is also much weaker than its full-length version,
as "Wag'N" was its most distinctive component.

In determining whether a likelihood of confusion exists, "evidence of actual confusion is 'often paramount.'" George & Co., 575 F.3d at 393 (citing Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001)). Plaintiff concedes that it has no evidence of actual confusion, and instead argues that actual confusion is not absolutely necessary to sustain a trademark infringement claim. See Pl.'s Mem. at 26-27. Although the lack of such evidence is not dispositive, the existence of actual confusion is "the most compelling evidence" that confusion is likely. Lone Star, 43 F.3d at 937. Without evidence of a single confused consumer, plaintiff's claim of likely confusion is largely supposition.

At oral argument, plaintiff's counsel argued that, because the "Wag'N Rover Respond'R" and "RedRover Responders" marks have co-existed in the market for a short period of time, actual confusion is unlikely to have developed already. Yet plaintiff has declined to conduct a survey of the relevant consumer base as a substitute for evidence of actual confusion. Because plaintiff has the burden of establishing the likelihood that consumers will be confused by the parties' use of these marks, its failure to develop such relevant evidence severely undercuts its case.

Rather than producing evidence of actual confusion or conducting a survey, plaintiff appears to be concerned with the

18

hypothetical possibility that one of defendant's volunteers will make a mistake when performing pet emergency services and that the error could be associated with and reflect poorly on Wag'N. See De Pablo Dep. at 98.   In particular, plaintiff is worried that unfavorable publicity created by RedRover volunteers could be transmitted to the public via social media.   See id. at 99-100 ("Once its [negative news about RedRover Responders] published, Google and the internet crawlers have—you know, they're going to replicate that, and there are going to be more than one article.   And if—since we provide similar services in—whether it's hosting or actually providing them, maybe not necessarily under Rover Respond'R, but under Wag'N, the crawlers still find Wag'N Rover Respond'R on the Wag'N Pet Safety website.").   This hypothetical chain of events is entirely speculative and removed from any evidence that consumers have in fact been confused or are likely to be confused by defendant's products.   Accordingly, plaintiff's failure to produce either evidence of actual confusion or a survey weighs heavily against a finding of infringement.

### 4. Defendant's intent

"[I]ntent to confuse the buying public...is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as

deliberately to induce confusion." Pizzeria Uno, 747 F.2d at
1535.  Lack of bad faith is not a defense to a claim of
infringement if the plaintiff can show actual or likely
confusion.  Id.

Plaintiff has not made a showing of bad faith on the part
of defendant.  There is no evidence in the record that defendant
adopted the RedRover Responders mark in order to gain a free
ride on the good will Wag'N had developed in the industry.  To
the contrary, Nicole Forsyth, president and CEO of RedRover,
testified that she had not heard of Wag'N or Wag'N Rover
Respond'R before the instant litigation.  Forsyth Dep. at 45:11-
23; see also Schiffren Mot. Decl. Ex. II (email from Nicole
Forsyth dated June 27, 2011, after receiving cease and desist
letter from Wag'N, stating "I have never heard of [Wag'N].").
In the process of choosing its new name, defendant employed a
focus group regarding possible new names and obtained board of
directors input.  Forsyth Dep. at 31:3-7; 38:5-12.  Defendant's
California trademark counsel also undertook a trademark search
for the term "RedRover" "covering emergency sheltering for
animals and animal rescue services."  Forsyth Decl. Ex. F.  That
search produced a 321-page full report that included a reference
to Wag'N Rover Respond'R.  Schiffren Mot. Decl. Ex. K at 68
(full report).  Based on the results of the search, counsel
prepared a summary report, which included "an analysis of the

20

information specifically applicable to [defendant's] proposed mark." Forsyth Decl. Ex. F. The report concluded that it was unlikely that existing marks using the term "RedRover" would prevent successful registration of the mark to defendant. Forsyth reviewed the summary report provided by counsel, which did not include plaintiff's registered mark. Id.; see also Forsyth Dep. at 38:23-39:1.

Plaintiff maintains that defendant acted in bad faith by failing to run a separate trademark search for "RedRover Responders,"[6] by pursuing use of the mark after receiving the trademark search results, and by failing to terminate use of the mark after receiving cease and desist letters from Wag'N. Pl.'s Mem. at 24-26. In light of the clear differences between plaintiff's and defendant's marks, counsel's trademark search and defendant's reliance on counsel's analysis of existing trademarks, and no evidence of intent to profit off of the reputation of Wag'N, there is no evidence in the record to find that defendant acted in bad faith.

### 5. Similarity of the goods and services identified by the marks

---

[6] Forsyth explains the decision to limit the trademark search to "RedRover" by stating that, because the "program names were all tied to the main name," the "RedRover" search would find anything similar to the program names. See Forsyth Dep. at 37:16-21.

In considering "the similarity of the goods or services identified by the marks…the goods in question need not be identical or in direct competition with each other." George & Co., 575 F.3d at 397.  The pivotal question is thus "whether a reasonable consumer would be likely to believe that the parties' products are the type to emanate from a common source." V&S Vin & Sprit Aktiebolag v. Hanson, 61 U.S.P.Q.2D (BNA) 1277, at *12 (E.D. Va. Oct. 16, 2001).  The parties hotly dispute this factor, but upon close inspection, the general types of goods and services provided by the parties are to some degree related— i.e., pet care in emergencies, although the actual products and services identified by the parties' respective marks are quite different.

Although the defendant does sell some promotional merchandise, the only use it makes of "RedRover Responders" is on t-shirts worn by volunteers and in a section of a brochure discussing the volunteer program.  Forsyth Dep. at 88:11-16. All other products are labeled only with the general RedRover name, and not with "RedRover Responders."  Id.  Plaintiff contends that defendant sells emergency kits similar to those offered by Wag'N, but the evidence indicates that defendant stopped selling kits before changing its name to RedRover. Currently, defendant's involvement with emergency kits is limited to disaster preparedness guidance, which includes

22

instruction on "how to prepare a kit" in the event of an evacuation; it does not actually offer such kits. Forsyth Dep. at 86:20-87:20; 96:20-97:2; 98:6-13.[7] Like Wag'N, defendant also provides emergency contact cards and house decals; however, RedRover charges a nominal fee for these items and they are not sold for a profit, as are plaintiff's kits. Most importantly, these items are labeled only with "RedRover," not with the challenged "RedRover Responders" mark. See Schiffren Reply Decl. Ex. T; Forsyth Dep. at 84:17-21.

The specific products and services bearing the marks "Wag'N Rover Respond'R" and "RedRover Responders" thus do not directly overlap. Wag'N uses its mark only in connection with its emergency kits and the related membership service; defendant uses "RedRover Responders" only to denote its emergency response volunteers via t-shirts and to explain the volunteer program on its website and in its brochure. Although a disaster response volunteer program run by a non-profit organization is clearly distinct from a physical product and membership service for sale to individual pet owners, plaintiff is correct that, at a very general level, both entities deal with pet care in emergencies. Even assuming that the goods and services identified by the

---

[7] Defendant recommends that pet owners create their own emergency kits, including items such as the pet's medication and supplies of food and water. See Schiffren Reply Decl. Ex. L ("Pet Disaster Preparedness" page of RedRover website).

disputed marks are sufficiently related, however, the other Pizzeria Uno factors still require a finding of no infringement.[8]

### 6. Similarity in facilities and advertising

Finally, any overlap in the facilities and modes of advertising used by the parties does not preclude summary judgment for defendant.  For example, plaintiff identifies several pet magazines in which it advertises, and points to an article in the April 2011 issue of Fido Friendly magazine that mentions both plaintiff and defendant.  See Pl.'s Mem. at 23; Schiffren Mot. Decl. Ex. EE.  Plaintiff also argues that the fact that both parties had a "booth presence at the HSUS Taking Action for Animals conference in 2009" and that plaintiff attended a national conference hosted by defendant in 2008 is further evidence of this overlap.  See Pl.'s Mem. at 23-24. These events took place long before defendant adopted the RedRover name in June 2011.  Moreover, even if the parties do use similar facilities and advertising, such use does not

---

[8]It is not necessary for all of the Pizzeria Uno factors to indisputably favor one party to grant summary judgment.  See Anheuser-Busch, Inc., 962 F.2d at 320 ("[T]he Pizzeria Uno factors are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion."); cf. Rosetta Stone Ltd., 2012 U.S. App. LEXIS 7082, at *16 ("This judicially created list of factors is not intended to be exhaustive or mandatory.").

overcome the conclusion required by the other <u>Pizzeria Uno</u> factors discussed above.[9]

## IV.  CONCLUSION

In sum, there are no material facts in dispute as to the likelihood of confusion between plaintiff's and defendant's marks.  The record clearly shows that plaintiff's and defendant's marks are very dissimilar; "Wag'N Rover Respond'R" and "Rover Respond'R" are extremely weak marks; plaintiff cannot show that even a single consumer has in fact been confused by the use of defendant's mark; and there is no evidence of defendant acting in bad faith in adopting its mark.  For all of these reasons, the Court finds that defendant's use of "RedRover Responders" does not infringe plaintiff's "Wag'N Rover Respond'R" or "Rover Respond'R" marks.  Accordingly, defendant's Motion for Summary Judgment will be granted and plaintiff's

---

[9] The final two factors—the quality of the defendant's product and the level of sophistication of the consumer—are not applicable in this case.  "Consideration of the quality of the defendant's product is most appropriate in situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods."  <u>Sara Lee</u>, 81 F.3d at 467.  Given the differences in the products labeled with the parties' marks, this factor is not applicable here.  Similarly, "buyer sophistication will only be a key factor when the relevant market is not the public at-large."  <u>Id.</u>  Lay persons who might volunteer for defendant's sheltering service or purchase plaintiff's emergency kit are not more or less sophisticated than the general public, rendering this factor unhelpful in the likelihood of confusion analysis.

Motion will be denied by an Order to accompany this Memorandum
Opinion.

Entered this ___9___ day of May, 2012.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge